UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RALSTON WILLIAMS, | : | Civil Case Number |
|    *Plaintiff*, | : | |
| | : | 3:15-cv-01301 (VLB) |
| v. | : | |
| | : | February 22, 2018 |
| UNITED STATES, | : | |
|    *Defendant*. | : | |

## MEMORANDUM OF DECISION DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 [DKT. 1]

Mr. Ralston Williams ("Williams" or "Petitioner") brings this *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. He raises claims against trial counsel, sentencing counsel, and this Court, asserting (1) his trial counsel was ineffective in failing to request that the jury determine the drug quantity beyond reasonable doubt and in failing to properly advise him of his right to testify, (2) the Court erred in determining the drug quantity at sentencing by using a preponderance of the evidence standard, and (3) his sentencing counsel was ineffective for failing to object to testimony from Ms. Jessica Burrows's family members. For the foregoing reasons, this motion to vacate, set aside, or correct sentence, [Dkt. 1], is DENIED on all grounds except the claim that defense counsel failed to properly advise Mr. Williams of his right to testify. The Court will hold a hearing on this limited issue to develop the record and will thereafter rule on this ground.

## Background

On September 14, 2011, a grand jury charged Mr. Williams, with a three-count indictment of (1) conspiracy to distribute and to possess with intent to

1

distribute heroin in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), (b)(1)(C); (2) possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and (3) possession with intent to distribute cocaine base / crack cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). *See United States v. Williams* ("*Williams*"), Case No. 11-cr-00172, [Dkt. 13 (Indictment)]. Co-defendants Jason Brodsky ("Brodsky"), Bruce Dais ("Dais"), and Alana Fiorentino ("Fiorentino") were charged only with the first count. *Id.* Mr. Williams entered a plea of not guilty on September 29, 2011. *See Williams*, [Dkt. 29 (Minute Entry)]. Unlike Mr. Williams, his co-defendants each entered into a plea agreement prior to trial. *See Williams*, [Dkt. 92 (Fiorentino Plea Agreement), Dkt. 138 (Brodsky Plea Agreement), Dkt. 145 (Dais Plea Agreement)].

Trial commenced on May 18, 2012 and lasted four days. Co-defendants Fiorentino and Brodsky testified on behalf of the Government. *See Williams*, [Dkt. 220 (Trial Tr. 5/18/12 Vol. I) at 2; Dkt. 222 (Trial Tr. 5/24/12 Vol. II) at 10]. On May 29, 2012, the jury found Mr. Williams guilty on all three counts. *See Williams*, [Dkt. 174 (Jury Verdict)].

In between verdict and sentencing, the Court held an evidentiary hearing to determine whether it should consider Ms. Burrows's death in sentencing Mr. Williams. The Court took the matter under advisement, and the parties subsequently briefed this issue in multiple sentencing memoranda. *See* [Dkt. 226 (Gov. Sentencing Mem. 10/9/12); Dkt. 228 (Def. Sentencing Mem. 10/23/12); Dkt. 233 (Gov. Reply Sentencing Mem. 11/2/12); Dkt. 247 (Def. Supplemental Sentencing Mem. 1/20/13)]. On January 28, 2013, the Court concluded that it

would not apply the death resulting enhancement under U.S.S.G. § 2D1.1(a)(2) but that it would "take into consideration [Ms. Burrows's] death, either for purposes of an upward departure or for purposes of identifying offense characteristics or related conduct, in fashioning an appropriate sentence, which is reflective of the defendant's conduct and the impact of the conduct." [Dkt. 312 (Hr'g Tr.) at 7:21-8:1].

The Court held the sentencing hearing on May 14, 2013. The Court determined there existed ample evidence supporting the drug quantities listed in the Presentence Report. [Dkt. 315 (Sentencing Tr.) at 14:9-15]. The Court also found there was more than a preponderance of the evidence establishing Mr. Williams's role as a leader or supervisor in the criminal enterprise. *See id.* at 14:16-24.

Kim Burrows, Ms. Burrows's mother, thereafter testified about her daughter's characteristics and the impact of her daughter's death on the family. *See id.* at 18:5-23:4. Mr. Williams's friend, daughter, and sister then spoke on his behalf. *See id.* at 25:12- 28:19.

Mr. Williams also testified about the matters for which he took responsibility, his compassion for people addicted to drugs, including the decedent, his efforts to dissuade the decedent from using the drugs he continued to traffic, and that he was "not a big drug dealer." *See id.* at 29:1-33:10. After considering the testimony, the Court sentenced Mr. Williams to 168 months' imprisonment; three years' supervised release; a fine of $100,000 to be paid if he

is deported and illegally reenters; and a $300 special assessment. *Id.* at 38:11-40:9.

Mr. Williams timely appealed the jury verdict and his sentence. *See Williams*, [Dkt. 305 (Notice of Appeal)]. On June 20, 2014, the Second Circuit issued a summary order affirming both his conviction and sentence. [Dkt. 344]. The Second Circuit agreed with the Court's quantity finding, specifically stating that "[t]he trial evidence also supported the district court's estimate . . . as to the quantity of heroin involved. *See id.* at 4. Mr. Williams did not file a petition for writ of certiorari and his time to do so expired on September 18, 2014. *See* 28 U.S.C. § 2101(c) (requiring a writ of certiorari to be filed within 90 days after the entry of judgment). This habeas petition was timely filed on August 31, 2015. *See* 28 U.S.C. § 2244(d)(1).

On July 27, 2015, the Court reduced Mr. Williams's sentence from 168 months to 152 months pursuant to 18 U.S.C. § 3582(c)(2) and in light of the United States Sentencing Guideline amendment to the drug quantity table, which reduced by two levels the base level offense for drug convictions. *See Williams*, [Dkt. 379]. Mr. Williams appealed this reduction and the Second Circuit issued a summary order on March 9, 2017 that affirmed the Court's decision. [Dkt. 391].

## Legal Standard

Section 2255 enables a prisoner in federal custody to petition a federal court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Relief under Section 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a

fundamental defect which inherently results in complete miscarriage of justice." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotation marks and citation omitted). Section 2255 provides that a district court should grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

Claims for ineffective assistance of counsel are analyzed under the two part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, a movant must both allege facts demonstrating that "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687–88, 694. As to the first showing, a movant must demonstrate that counsel's performance "amounted to incompetence under 'prevailing professional norms'" rather than demonstrating that the performance "deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690). As to the second showing, a movant must demonstrate "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## Analysis

I. Claims Involving the Drug Quantity Determination

Mr. Williams raises two separate claims related to the quantity of heroin involved in his case. He first asserts trial counsel was ineffective in failing to request a special verdict that the jury determine the conspiracy involved a drug quantity greater than one kilogram of heroin. [Dkt. 3 (2255 Mot. Mem.) at 3]. The

5

basis for this claim is that the quantity involved was 1 kilogram or more of heroin, which led to a sentence above the mandatory maximum penalty under § 841(b)(1)(C) for which he was charged.  Second, he claims the Court erred by considering the drug quantity at sentencing because the drug quantity constitutes facts not included in the Indictment.  This argument is based on the Court's sentence to a term above 10 years' imprisonment, which he contends is the mandatory minimum sentence under § 841(b)(1)(A).  Although stylized as different claims, both are centered on the same question: was drug quantity an *element* of the offense requiring a jury determination beyond a reasonable doubt?  The Court will address these two claims together as they can be interchangeably applied to trial counsel and the Court.

"The touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an 'element' or 'ingredient' of the charged offense."  *Alleyne v. United States*, 570 U.S. 99, __, 133 S. Ct. 2151, 2158 (2013).  Any fact that "increases the punishment above what is otherwise legally prescribed" is considered an element of the offense.  *Id.* (discussing the holding in *Apprendi v. New Jersey*, 530 U.S. 466, 483 (2000)).  This includes both facts that increase the mandatory minimum sentence, *Alleyne*, 133 S. Ct. at 2158, as well as facts that exceed the mandatory maximum sentence, *United States v. Gonzalez*, 420 F.3d 111, 125 (2d Cir. 2005).  In other words, a jury must decide beyond a reasonable doubt any fact that increases the mandatory minimum or exceeds the mandatory maximum sentence.

### A. *A Court's Drug Quantity Finding Does Not Increase the Mandatory Minimum for a § 841(b)(1)(C) Conviction*

Mr. Williams contends the Court's finding that one kilogram of heroin was involved in the offense increases the mandatory minimum sentence under 21 U.S.C. § 841(a)(1), (b)(1)(C) to 10 years and is therefore an element of the offense. The Government does not directly address this issue but rather argues generally that his supposition is based on a misunderstanding of the law.

In *Alleyne*, the Supreme Court held that any fact increasing the mandatory minimum sentence constituted an element of the offense. *Alleyne*, 133 S. Ct. at 2155. The Supreme Court reasoned: "Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Id.* Notwithstanding this holding, the Supreme Court took great care to describe the limitations of this principle. Justice Thomas stated,

> Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment. *See, e.g., Dillon v. United States*, 560 U.S. ——, ——, 130 S. Ct. 2683, 2692, 177 L. Ed. 2d 271 (2010) ("[W]ithin established limits[,] . . . the exercise of [sentencing] discretion does not contravene the Sixth Amendment even if it is informed by judge-found facts" (emphasis deleted and internal quotation marks omitted)); *Apprendi*, 530 U.S., at 481, 120 S. Ct. 2348 ("[N]othing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute").

*Id.* The key distinction lies in whether the finding creates, *as a matter of law*, a mandatory increase in the sentence.

7

Cases within this circuit decided subsequent to *Alleyne* support the conclusion that the drug quantity does not increase the mandatory minimum under § 841(b)(1)(C). For example, in *United States v. Holley*, 638 F. App'x 93, 99-100 (2d Cir. 2016), the Second Circuit affirmed a district court's sentence of a § 841(b)(1)(C) conviction wherein the sentencing court determined drug quantity by a preponderance of the evidence. The Second Circuit noted that "[t]he Supreme Court's decision in *Alleyne* is inapposite because the facts found by the court at sentencing did not increase the mandatory minimum sentence for Love's offense." *Id.* at 100.

In addition, the Second Circuit reiterated, "With respect to drug quantity, our precedent instructs that 'where drug quantity is not found by a jury beyond a reasonable doubt, but rather is determined by the district court at sentencing under a preponderance standard, the defendant must be sentenced under 21 U.S.C. § 841(b)(1)(C), the subsection applicable to narcotics offenses without regard to quantity.'" *Id.* (quoting *United States v. Yu*, 285 F.3d 192, 197 (2d Cir.2002)). Mr. Williams, was indicted for and convicted of possession with intent to distribute and conspiracy to distribute and to possess with intent to distribute an unspecified quantity of heroin in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), (b)(1)(C).

Other cases have implemented Justice Thomas's above limitation and recognized that facts not constituting elements may be addressed at sentencing for a § 841(b)(1)(C) conviction. *See, e.g., United States v. Hilson*, 538 F. App'x 15, 18 (2d Cir. 2013) ("Thus, the district court did not calculate drug quantity in order

8

to apply a mandatory minimum, but only to calculate the Sentencing Guidelines that applied with no mandatory minimum."); *United States v. Brown*, No. 2:13-cr-131, slip op. at *4 (D. Vt. Oct. 14, 2016) ("The relevant statute here, 21 U.S.C. § 841(b)(1)(C), provides for imprisonment for a term of up to 20 years, and the district court's application of the firearm enhancement under the advisory Sentencing Guidelines affected only the guidelines recommendation and not the statutory sentencing range. Brown thus did not face a higher mandatory minimum sentence through the operation of the Sentencing Guidelines."). There is therefore no error here.

This Court was not required *as a matter of law* to sentence Mr. Williams to at least 10 years' imprisonment, and therefore the drug quantity is not an element of the offense for this reason. The Court's decision to sentence Mr. Williams to 168 months' imprisonment was discretionary and based on the facts of the case. If facts had existed warranting a below-guidelines departure, the Court would have been able to use its discretion to impose such a sentence. These facts did not exist, and accordingly the Court's sentence fell within the guidelines range. Therefore, Mr. Williams cannot succeed on his claim against trial counsel or this Court on these grounds.

### A. *A Drug Quantity Finding Did Not Exceed the Mandatory Maximum for a § 841(b)(1)(C) Conviction*

Mr. Williams contends this failure caused his sentence to be enhanced under § 841(b)(1)(A). The Government challenges this position because his sentence was below the 20-year maximum penalty as provided under §

841(b)(1)(C). The Court agrees with the Government that Mr. Williams's argument is premised on a misunderstanding of the facts and procedure.

Mr. Williams refers to *United States v. Gonzalez,* 420 F.3d 111, 125 (2d Cir. 2005), a case in which the Second Circuit vacated a defendant's guilty plea of 21 U.S.C. § 841(b)(1)(A) because a jury did not determine and he did not admit to the drug quantity element. Mr. Williams cites *Gonzalez* for the proposition that the "'drug quantity is an element' of the offense 'that must always be pleaded and proven to a jury or admitted by [the] defendant.'" [Dkt. 3 at 4 (quoting *Gonzalez*, 420 F.3d at 131)]. However, Mr. Williams leaves out key language that distinguishes *Gonzalez* from this case: that drug quantity is an element only for aggravated § 841 offenses under § 841(b)(1)(A) or (b)(1)(B). *Gonzalez*, 420 F.3d at 131. Indeed, the Second Circuit in *Gonzalez* expressly noted that drug quantity is an element for these aggravated offenses because there exists the potential for a defendant to be sentenced above the statutory maximum provided under 21 U.S.C. § 841(b)(1)(C). *See id.* at 121. The Second Circuit remanded the case with directions for the district court to vacate the conviction and for proceedings to commence on the § 841(b)(1)(A) charge, stating the following:

> In doing so, the government may still agree to accept a lesser disposition with Gonzalez pleading guilty to an *unquantified* drug conspiracy under *§ 841(b)(1)(C)*, but, in that case, Gonzalez would be sentenced pursuant to the zero-to-thirty year range of imprisonment prescribed by that section, without regard to any § 841(b)(1)(A) mandatory minimum.

*Id.* at 116 (emphasis added). Williams was neither indicted nor convicted of an 18 U.S.C. § 841(b)(1)(A) offense, which specifies a drug quantity.

The Court clarifies for Mr. Williams that even where the drug quantity or drug type is not referenced in the indictment or found by a jury, a district court may nonetheless use the drug quantity and drug type to establish "the appropriate sentence so long as the sentence imposed is not greater than the maximum penalty authorized by statute for the offense charged in the indictment and found by the jury." *United States v. Thomas*, 274 F.3d 655, 673 (2d Cir. 2001) (en banc). In this context, it is only when a sentence exceeds § 841(b)(1)(C)'s statutory maximum that drug quantity must be specified as an element of the offense. *Id.*; *see United States v. Cordoba-Murgas*, 422 F.3d 65, 69 (2d Cir. 2005) (holding "the defendant cannot be sentenced to a term of imprisonment greater than the statutory maximum set forth in § 841(b)(1)(C) for violation of § 841(a) without a specified quantity"); *Gonzalez*, 420 F.3d at 131 ("If a defendant is convicted only on a lesser unquantified drug charge, he must be sentenced pursuant to § 841(b)(1)(C), which generally provides no mandatory minimum sentence."); *United States v. Martinez*, 475 F. Supp. 2d 154, 162 (D. Conn. 2007) ("Thus, where, as here, the type and quantity of drugs involved in the charged crime is not used to impose a sentence above the statutory maximum, drug type and quantity remain, in accordance with *Campuzano*, merely sentencing factors. . . .").

Mr. Williams's belief that he was sentenced under the aggravated offense of § 841(b)(1)(A) is incorrect. At an evidentiary hearing held on January 23, 2013, the Court expressly stated, "So, to summarize, the maximum sentence that the Court perceives it can legally impose is a twenty-year sentence. . . ." [Dkt. 312

11

(Evid. Hr'g) at 7:16-17]. The Judgment indicates that all three counts of conviction pertained to 21 U.S.C. § 841(b)(1)(C) and the Court did not reference § 841(b)(1)(A) at sentencing. *See* [Dkt. 300 (Judgment); Dkt. 315]. The Court sentenced him to a term of imprisonment of 168 months, i.e. 14 years, which is well below § 841(b)(1)(C)'s statutory maximum of 20 years and does not constitute an aggravated offense. *See* [Dkt. 300]. The Court was therefore permitted to use the drug quantity as a factor to consider when it sentenced Mr. Williams; this does not mean drug quantity constituted an element of the offense. *See Thomas*, 274 F.3d at 673; *Martinez*, 475 F. Supp. 2d at 161 ("The Court imposed a sentence of 292 months' imprisonment, fully 68 months below the 30-year statutory maximum to which he was exposed based on the drug trafficking conspiracy charge as enhanced by a previous felony narcotics conviction. There was thus no *Apprendi* violation in Martinez's narcotics trafficking indictment or at his sentencing, and thus no basis for Martinez's non-ineffective assistance *Apprendi* claims."). There is no basis to conclude the Court sentenced Mr. Williams pursuant to § 841(b)(1)(A) or that the drug quantity was an element of the offense.

Because the Court sentenced Mr. Williams to a term less than 20 years' imprisonment, Mr. Williams cannot demonstrate trial counsel's performance was deficient or prejudicial to the outcome, and he cannot show the Court abused its discretion in considering the drug quantity at sentencing.

II. **Claim Involving Trial Counsel's Failure to Advise of Right to Testify**

Mr. Williams next claims his trial counsel ineffectively advised him not to testify at trial and did not leave the ultimate decision to him. *See* [Dkt. 3 at 5]. Specifically, Mr. Williams claims he notified trial counsel he "wanted to tell his side of the story, but counsel advised Petitioner that it would be best to speak during his sentencing proceedings because he could explain his side and ask[ ] for leniency regarding a lesser sentence." *Id.* Mr. Williams did not submit an affidavit but he contends an evidentiary hearing is warranted based on the absence of evidence on this topic.

The Government responds that Mr. Williams elected to testify at a motion to suppress hearing prior to trial, which indicates he knew of his right to testify and his right to make the ultimate decision. *See* [Dkt. 6 at 13]. According to the Government, trial counsel's advice against Mr. Williams testifying at trial is reasonable in light of the potential impeachment issues implicated by his prior suppression hearing testimony as well as prior arrests and prior convictions. *Id.* Like Mr. Williams, the Government did not submit an affidavit from trial counsel or any other admissible evidence.

It is well-settled that a criminal defendant "has the right to take the witness stand and to testify in his or her own defense." *Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011) (quoting *Rock v. Arkansas*, 483 U.S. 44, 49 (1987)). The decision to testify is solely for the defendant to make, and defense counsel is tasked with the responsibility to "advis[e] the defendant of his right to testify or not to testify." *Id.* Included in counsel's duty is to "advise the defendant about

the benefits and hazards of testifying and not testifying," and although counsel is permitted to "strongly advise the course that counsel thinks best" he must leave the ultimate decision to the defendant. *Id.*

As a general matter, a district court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255(b). A claim that involves "off-the-record interactions" cannot be summarily dismissed without further developing the record. *See Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001) (stating the defendant's claim regarding his right to testify "involves off-the-record interactions with his trial counsel and therefore cannot be determined by examining the motion, files, and records before the district court"); *Armienti v. United States*, 234 F.3d 820, 825 (2d Cir. 2000) (regarding a conflict of interest allegation, "[t]hese issues implicate actions taken by counsel outside the presence of the trial judge and therefore could not ordinarily be resolved by him without such a hearing").

The Court concludes that an evidentiary hearing is warranted to conclusively determine off-the-record interactions between trial counsel and Mr. Williams. Mr. Williams's testimony at the motion to suppress is circumstantial evidence of his knowledge of his right to testify at trial, and the Court finds that it is not sufficient to "conclusively show" Mr. Williams is not entitled to relief. *See* 28 U.S.C. § 2255(b). Because neither party has submitted any evidence enabling the Court to make a conclusive determination as required under § 2255(b), the Court will therefore schedule a hearing to gather additional evidence.

14

### III. Claims Regarding Victim's Family Member Testimony

Mr. Williams challenges the Court's finding that Jennifer Burrows's family was a victim of the offense and entitled to speak at the proceeding. It is Mr. Williams's position that sentencing counsel was ineffective in failing to object to the testimony of Ms. Burrows's mother and the Court abused its discretion in allowing the testimony. The Government responds that trial counsel heavily litigated these issues and Mr. Williams could have raised this matter against the Court on appeal but failed to do so.

The Court begins this analysis with a brief summary of relevant facts and procedure. Prior to sentencing, the Court held a hearing on August 21, 2012, to determine whether Ms. Burrows's death could be used for an upward departure under U.S.S.G. § 2D1.1(a)(2) or § 5K2.1, or for another sentencing purpose. *See* [Dkt. 225 at 3:1-6:11]. The Court deferred from ruling on the matter and allowed the parties to brief this issue. Such briefing was extensive, and Mr. Williams's sentencing counsel submitted two memoranda[1] challenging the permissibility of the upward departures. The first memorandum was submitted in October 2012 in response to the Government's memorandum submitted earlier that month. [Dkt. 228]. Attorney O'Reilly addressed only the upward departures under U.S.S.G. §§ 2D1.1(a)(2) and 5K2.1. *See id.* He later filed the second memorandum on January 20, 2013, addressing the same issues. *See* [Dkt. 247].

The Court orally ruled on this issue at a hearing held on January 28, 2013. *See* [Dkt. 312]. The Court determined the death-resulting enhancement under

---

[1] Sentencing counsel submitted a third sentencing memorandum on May 6, 2013, which did not address this issue. *See* [Dkt. 291 (Def. Sentencing Mem. 5/6/13)].

15

U.S.S.G. § 2D1.1(a)(2) should not be applied and accordingly the Government reserved its right "to use the fact of the death caused by the heroin conspiracy as a basis for either an upward departure or advocate that the Court consider that along with other 3553(a) factors." *Id.* at 6:18-22. The Court specifically stated,

> So, to summarize, the maximum sentence that the Court perceives it can legally impose is a twenty-year sentence, that the base offense level should be calculated without regard to the Court's finding that the death resulted from the sale of the drugs by Mr. Brodsky in furtherance of his conspiracy with Mr. Williams, but that the Court take into consideration [Ms. Burrows's] death, either for purposes of an upward departure or for purposes of identifying offense characteristics or related conduct, in fashioning an appropriate sentence, which is reflective of the defendant's conduct and the impact of the conduct.

[Dkt. 312 at 7:16-8:1]. The Government thereafter submitted statements from Ms. Burrows's family, including the family member who was traumatized by finding her body, "which describe the utter devastation suffered by [her] family as a result of her death." *See* [Dkt. 292 (Gov. Sentencing Mem. 5/7/13) at 17]. At the sentencing hearing held May 23, 2013, the Court orally issued a determination that Ms. Burrows's family members were victims and could testify at the hearing. *See* [Dkt. 315 at 15:13-16:1].

To the extent Mr. Williams alleges he was deprived of notice and an opportunity to respond, the Court finds that the submission of family members' statements well in advance of the sentencing hearing afforded sufficient notice that the Government would seek to use family members' statements to advocate for a longer sentence. His reference to *United States v. Copeland* therefore is unavailing for this reason. *See Copeland,* 902 F.2d 1046, 1050 (2d Cir. 1990) ("The defendant, of course, is entitled to notice of and an opportunity to respond to

information to be considered by the sentencing court, in order that he not be sentenced on the basis of misinformation.").

Mr. Williams does not cite any legal authority that stands for the proposition that Ms. Burrows's family members are prohibited from being considered victims and from speaking at the hearing, and he cannot because legal authority gives them the right to be heard. Section 3771(e) of Title 18 of the United States Code defines a "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense. . . ." Where a "crime victim" is deceased, her family members "may assume the crime victim's rights. . . ." *Id.* Rights under this statute include "[t]he right to be reasonably heard at any public proceeding in the district court involving . . . sentencing. . . ." 18 U.S.C. § 3771(a)(4). It therefore is in keeping with the statute that Ms. Burrows's mother was permitted to testify. Mr. Williams fails to establish his sentencing counsel's acted "below an objective standard of reasonableness" in failing to object to statutorily designated victims' exercise of their statutory right to be heard.

Although Mr. Williams fails on deficiency grounds, the Court nonetheless will address the prejudice prong of the *Strickland* standard. The Court notes that Mr. Williams was sentenced to 168 months' imprisonment, the low end of the guidelines range. *See* [Dkt. 300 at 1]. The Court reflected upon the testimony of Ms. Burrows's mother and also noted Mr. Williams and family and community members spoke at sentencing. *See* [Dkt. 315 at 33:14-38:16]. In addition, the court opined at length about the impact of selling drugs and using addicts to

facilitate the execution of the crime, commenting: "To see firsthand the devastation of a person you profess to care about and then go on willy-nilly, notwithstanding, selling d[r]ugs to other people suggests a predatory mentality, a truly chilling predatory mentality." *Id.* at 36:1-36:5. It is clear the court considered factors outside of Ms. Burrows's testimony. Contrary to Mr. Williams's contention, the Court was more influenced by Mr. Williams's own statement than any other statement made at the hearing in fashioning the sentence, which was sufficient but not greater than that necessary to fulfill the purposes of sentencing. Mr. Williams fails to establish "a probability sufficient to undermine confidence in the outcome" if the testimony were to be excluded. *Strickland*, 466 U.S. at 694.

Lastly, the Court acknowledges Mr. Williams included the language, "[w]hether the Court abused its discretion," in his opening sentence to his ineffective assistance of counsel claim against sentencing counsel for failing to object to the Burrows family victim determination and the testimony of Ms. Burrows's mother.[2] *See* [Dkt. 3 at 8]. To the extent this language is intended to be a claim against this Court for abuse of discretion, the Court finds that it fails for the same reasons as that of the ineffective assistance of counsel claim.

To the extent this language is intended to contend this Court is disqualified, Mr. Williams has failed. Section 455(a) of Title 28 of the United

---

[2] Specifically, the sentence says, "Whether the Court abused its discretion, and counsel's failure to object to the Court's findings that the Jessica Burrows family are victims of the offense and where [sic] entitled to speak during Petitioner's sentencing proceedings affected the outcome of the proceedings." *Id.* The subsequent paragraphs address only the ineffective assistance of counsel claim.

States Code requires a judge to disqualify herself if "impartiality might reasonably be questioned." Under §455(b)(1), such a person's disqualification is required there exists "a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). Finally, § 144 of Title 28 of the United States Code provides for the method of a federal district court judge's disqualification upon a party's filing of a timely affidavit asserting facts tending to show that the judge has a personal bias or prejudice. The term "abuse of discretion" is ubiquitous to appeals and collateral challenges. Rarely do a judge's findings or rulings form a basis to conclude that a judge is bias or partial, although they could. *See Liteky v. United States*, 510 U.S. 540 (1994). In *Liteky*, the United States Supreme Court explained the standard for disqualification in this context:

> "Partiality" does not refer to all favoritism, but only to such as is, for some reason, wrongful or inappropriate. Impartiality is not gullibility.
> * * *
> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Id.* at 552, 555. Mr. Williams has neither filed an affidavit nor has he stated any facts suggesting that this Court either was or is bias or partial against him. Thus, to the extent he seeks to have his sentence vacated or for this Court to recuse or disqualify itself, his request is DENIED for failure to establish any basis.

## Conclusion

For the aforementioned reasons, the Court DENIES Mr. Williams's claims based on the Court's consideration of drug quantity at trial (Grounds 1 and 3 of [Dkt. 3]) and DENIES Mr. Williams's claims based on the Court's determination that Ms. Burrows's family members were victims and entitled to testify (Ground 4 of [Dkt. 3]). To the extent Mr. Williams seeks to move to disqualify the Court, the denial of any motion to disqualify, which he may have intended to include in this petition, is DENIED without prejudice to filing in accordance with the legal standards applicable to such a motion. The Court ORDERS a hearing to gather evidence as to whether trial counsel properly advised Mr. Williams of his right to testify at trial (Ground 2).

                                        IT IS SO ORDERED.

                                        _____/s/_____
                                        Hon. Vanessa L. Bryant
                                        United States District Judge

Dated at Hartford, Connecticut: February 22, 2018